E. G. C. BLEAKLEY, receiver, &c.,

*v.*

ALFRED B. NELSON et al.

[Filed March 7th, 1898.]

1. A chattel mortgage not recorded in the clerk's office of the county in which the mortgagor resided at the time of its execution, and a sale made under it by the mortgagee, are void as against the creditors of the mortgagor.

2. A transfer or assignment of a chose in action as security for the payment of a debt, will be recognized and enforced in equity.

3. Such an assignment is not a chattel mortgage within the meaning of the Chattel Mortgage act. *Gen. Stat. p. 2112.*

On bill for injunction, &c. Order to show cause, answer and affidavits, &c.

This is an application for a preliminary injunction to restrain the removal or disposition of certain chattels and also certain moneys due upon a contract between the defendant Nelson and the Seaside Park Company.

The complainant is the receiver under appointment in aid of a recovery had by J. C. McNaughton & Company against the defendant Nelson in Ocean county circuit court. The judgment was entered and execution issued on September 20th, 1897; an

order for discovery was made on December 17th, 1897, and receiver appointed December 28th, 1897.

The defendant Nelson made a chattel mortgage to the defendant Morgan dated September 2d, 1897, to secure $7,945.62, the sum of five promissory notes which Nelson had theretofore given to Morgan. The articles mortgaged were included in the schedule at the end of the instrument, and specified a number of chattels and also "all moneys due and to become due to me from the Seaside Park Company arising from a contract made with said company by me on the 26th of February, 1897." By virtue of the chattel mortgage the mortgagee made sale of the goods mortgaged on the 13th day of November, 1897, and bought them in for $66.

It appears without dispute that Morgan had actually loaned to Nelson the amount of money named in the promissory notes, aggregating $7,945.62, and that there remains yet due thereon $4,899.24, less whatever credit might be allowable by the application of the proceeds of the sale under the chattel mortgage.

Nelson, the mortgagor, resided in Mercer county at the time of the execution of the chattel mortgage and continued in possession of the goods mortgaged until the time the mortgagee sold them.

The chattel mortgage was recorded on September 9th, 1897, in Ocean county.

*Mr. George H. Pierce*, for the complainant.

*Mr. Linton Satterthwait*, for the defendants.

GREY, V. C.

This chattel mortgage is criticised on several grounds. The affidavit of the mortgagee is declared to be a sufficient statement of the consideration, and it is insisted that the chattel mortgage is void because not recorded in the clerk's office of the county in which the mortgagor resided, and the sale by the chattel mortgagee under the chattel mortgage is alleged to have been made before the chattel mortgage came to be due.

The mortgage upon the goods and chattels was in my view a nullity as against the complainant, Bleakley, receiver, &c., under the judgment of J. C. McNaughton & Company against Nelson, because of the undisputed fact that it was not recorded in the county in which the mortgagor resided at the time of the execution of the chattel mortgage, as required by the Chattel Mortgage act. *Gen. Stat. p. 2113* §§ *52, 53*. The statute, in section 52, declares that every mortgage on goods and chattels not accompanied by an immediate delivery and followed by actual and continued possession of the things mortgaged shall be absolutely void as against creditors of the mortgagor  *  *  *  unless the mortgage  *  *  *  be recorded as directed in the succeeding section. Section 53 directs that the chattel mortgage be recorded in the clerk's office of the county where the mortgagor shall reside at the time of the execution thereof. The mortgage, so far as it operated upon the goods and chattels of the mortgagor, was by the express terms of the statute a nullity as to the complainant, who stands as a receiver for a creditor. The obvious intent of the act is to fix one place where the creditors and intending subsequent mortgagees and purchasers from the mortgagor may go, in order to ascertain whether his apparent ownership of goods or chattels in his possession is encumbered by a mortgage. Notice is imputed to creditors, subsequent mortgagees and purchasers if the terms of the statute directing the recording of the mortgage are observed; but the whole scheme of constructive notice by the record would be perverted if they could be held to be notified by a record made elsewhere than in the place where the statute directed them to look. The creditors who were to be protected by these provisions are the creditors at large of the mortgagor without exception. *Roe* v. *Meding, 8 Dick. Ch. Rep. 366*. Their rights may have accrued prior or subsequent to the mortgage; in either case they are entitled to the benefit of that statute. *Williamson* v. *Railroad Company, 2 Stew. Eq. 336*.

The mortgage upon the goods and chattels being a nullity as to the complainant, the sale of those goods and chattels which was attempted to be made by the mortgagee, under this authority,

Bleakley *v.* Nelson.

was also a nullity as to him, whether the chattel mortgage was in other respects void or not. As there was no chattel mortgage, there could be no sale under it. The goods and chattels named in the chattel mortgage stand, as to the complainant's judgment and execution, in the same position as if there had been neither chattel mortgage nor sale.

The complainant is entitled to an injunction to restrain the disposition and removal of the goods and chattels by the defendants under the authority of this void chattel mortgage and the sale made thereunder.

The mortgage as to its effect upon the moneys due and to become due on the contract made by the mortgagor with the Seaside Park Company, stands in a different position.

This item is a chose in action, and is not within the operation of the Chattel Mortgage act. That statute applies only to mortgages upon goods and chattels, and by its terms refers to such goods and chattels as are capable of delivery and of actual and continued possession. The object of the act is to make invalid, as against the creditors of the mortgagor, all mortgages on goods and chattels, unless possession be taken of them, or the mortgage be recorded as provided by the act. The old doctrine assumed that the possessor of personal property was the owner of it and that secret gifts or charges on that property made while he continued to use it as his own, were frauds upon creditors who dealt with him. *Twyne's Case, 3 Coke 80.* But the property which was so treated was of such a visible and tangible character that the possession of it was manifest to creditors, who might by reason thereof give credit to the possessor, and be injured by the subsequent assertion of the secret title. *Runyon* v. *Groshon, 1 Beas. 86 (1858),* contains an instructive collation of the cases showing the advance to the doctrine now accepted, that the continued possession of the chattels by the vendor or mortgagor, though *prima facie* indicative of fraud, may yet be explained away by proof by the vendee or mortgagee that the transaction was in good faith and without fraud. *Miller* v. *Shreve & Pancoast, 5 Dutch. 250 (1861),* confirmed this view, and in 1864 the first statute was passed compelling the filing and

yearly renewal of chattel mortgages in the county clerk's office, as a prerequisite to their validity as against creditors, subsequent mortgagees and *bona fide* purchasers. The obvious purpose of this and subsequent legislation on the subject, is to avoid the creation of secret liens upon personal property, leaving its possession with the creator of the lien, who might obtain credit from those who dealt with him by reason of his apparent ownership of the goods, or make further mortgage or sale of them to parties ignorant of the existing liens.

These evils, however, do not arise, neither do the corrective statutes, either in terms or spirit, apply when the mortgage in question disposes of that sort of property which is not of a physical character and of which there is no apparent possession which could tempt parties to deal with the possessor as with one having values which could be relied upon to pay the debts thus incurred. A Massachusetts statute required " mortgages of personal property " to be recorded, which language is somewhat wider than that used in an act which named only mortgages on " goods and chattels." In *Marsh* v. *Woodbury, 1 Metc. 436*, this act was held to apply only to goods capable of delivery, and not to a conditional assignment of a chose in action, and that it was not necessary that such an assignment should be recorded. This case was cited with approval as to this principle, in *Williamson* y. *New Jersey Southern Railway Co., 11 C. E. Gr. 403*, where it was held that the act concerning chattel mortgages did not extend to a mortgage of the capital stock of a corporation. In *Bacon* v. *Bonham, 12 C. E. Gr. 209*, there was an assignment of a legacy expectant, as security for the repayment of a loan. A judgment creditor filed his bill to compel discovery and application of the assets to the payment of his claim. It was held that in equity it was a good transfer as security for the loan, and not within the operation of the act concerning chattel mortgages, which did not apply to mortgages of choses in action. The decree was affirmed on appeal, though no allusion was made in the opinion to the operation of the Chattel Mortgage act. *Bacon* v. *Bonham,.6 Stew. Eq. 614.* I think the principles laid down in this case, both as to the scope of equitable assignments and

the limits of the application of the Chattel Mortgage act, control the disposition of the case under consideration.

Bonds and mortgages have been held in this state to be goods and chattels within the operation of section 6 of the statute of frauds (*Greenwood* v. *Law, 26 Vr. 168*), and it has been decided that trover will lie for their recovery as goods and chattels, under the act authorizing suit against the executor of a testator who, in his lifetime, had converted goods or chattels. *Rev. L. p. 174 (1820)*; *Elm. Dig. p. 165 § 5; Terhune* v. *Executors of Bray, 1 Harr. 54.* Chief-Justice Hornblower declared that bonds and other documentary securities must in law be decreed to be goods and chattels. I do not consider that these rulings should affect the views I have expressed, as the contract with the Seaside Park Company, now under consideration, was in no sense a security, being simply an executory agreement for compensation for labor and material, and entirely distinct from that class of personalty, the mortgaging of which led to the passage of the Chattel Mortgage acts.

There is neither allegation nor proof of fraud in the transaction between the defendant Nelson, the mortgagor, and the defendant Morgan, the defendant mortgagee. The evidence all goes to show good faith, and a transfer of the benefits of Nelson's contract with the Seaside Park Company, as a security for moneys which Morgan had loaned him. This took place on September 2d, 1894, several weeks before the judgment creditor had entered his judgment, and necessarily before any proceedings for discovery, &c., had been instituted. The title of a receiver, such as the complainant, as to the choses in action of the defendant in the judgment, has been defined in *Coleman* v. *Roff, 16 Vr. 11,* to relate to the time of the issuing of execution. This was on September 20th, 1897. At this time the equitable assignment to the defendant Morgan to secure the payment of his debt was complete, and all that remained to the defendant Nelson was his equity in the benefits of the contract after the payment of his debt to Morgan.

What amount is collectible on the contract does not appear, but the defendant in the judgment (Nelson) being entitled to

any surplus over the amount necessary to pay Morgan's debt should be restrained from further disposing of his interest if there be any. The injunction may go against Nelson to this extent as to these moneys.

I will advise the issuing of an injunction restraining the lefendant Nelson in the manner indicated by the views above expressed.