SARAH GORSCH, complainant,

*v.*

LENA (LINA) BIRKHAHN et al., defendants.

[Decided July 1st, 1930.]

*Mr. Charles Gorsch* and *Mr. Harry Levin,* for the complainant.

*Mr. Milton M. Unger,* for the defendants Samuel Hellerman and David Klein.

*Mr. Michael J. Quigley,* for the defendant Louis Steiner.

BERRY, V. C.

The complainant is a judgment creditor of the defendant Lena Birkhahn. The judgment was entered November 26th, 1929. The debt, however, was of long standing, having arisen out of a foreclosure suit about fifteen years ago. The suit which resulted in the judgment was begun in the Essex county circuit court September 28th, 1929. At that time the defendant Birkhahn was the owner of property in Newark valued at $16,000 or $17,000, subject to a mortgage of approximately $5,000, and which is the subject of this present suit. The bill seeks to set aside as in fraud of creditors, a mortgage in the sum of $5,100, executed by the defendant Birkhahn to her son-in-law, Samuel Hellerman, on October 8th, 1929; a mortgage of $6,000 to Louis Steiner, friend of

Hellerman, executed on October 24th, 1929; a deed from the defendant Birkhahn to David Klein, dated October 25th, 1929. The consideration named in the deed is one dollar. The bill also seeks to restrain the prosecution of a suit at law by Samuel Rotter, against the defendant. Birkhahn on a note of $1,650. Rotter is the brother-in-law of Lena Birkhahn.

The testimony taken in this cause is voluminous and it would serve no useful purpose to recite it in detail or to attempt an analysis of it. It discloses clearly, however, a wild scramble on the part of the defendant Birkhahn, some members of her family and friends, to render this defendant execution proof with all possible speed after the institution of the suit at law against her by the complainant. The entry of a judgment in the suit at law was delayed by the filing of an answer, later struck out by the court as sham and frivolous, and pending the disposition of that matter and the entry of the judgment, this defendant disposed of all of her real estate, withdrew all money in bank, and withdrew or assigned all building and loan stock of which she was possessed in this state, and removed to the State of New York to the home of her son-in-law, Hellerman. The whole series of transactions involved in this controversy is marked with such unmistakable badges of fraud that it is almost inconceivable that any defense of the transactions would be offered except upon the belief that the tell-tale tracks had been conpletely covered. Mrs. Birkhahn herself did not appear at any of the hearings in this cause, although she filed an answer generally denying the allegations of the bill. The excuse for her non-appearance was that she was suffering from high blood pressure, but no physician testified as to her physical condition, nor did the defendant Rotter interpose any defense to the action. He did not appear at any of the hearings. It is alleged that his suit at law against Mrs. Birkhahn was settled after this bill was filed, but a discontinuance was not filed until the last hearing in this cause. It is said that the Hellerman mortgage is valid because given in part to secure an antecedent debt of $2,100 and in part to secure

a present loan of $3,000. Records and checks are produced evidencing the loans both antecedent and present, but I am convinced that at the time the mortgage was taken it was with full knowledge on the part of the mortgagee Hellerman that it was intended to thereby defeat Mrs. Birkhahn's creditors. As to the Steiner mortgage, it is true that checks are produced to show that $6,000 was advanced by Steiner and that settlement was made in the usual manner, but the circumstances surrounding this transaction are suspicious and I believe that the money which passed in the transaction came from Hellerman in the first place, and that Steiner was a mere dummy in the matter. As to the sale to Klein the conveyance was made subject to encumbrances then aggregating about $16,000 and the consideration which he paid was approximately $500, $400 of which was for furniture in the Birkhahn apartment which was repurchased by Mrs. Birkhahn's daughter a few days later, and the property is still occupied by the son and daughter in the same condition in which it existed prior to the mother's departure for New York, although it is alleged that she pays rent to Klein in an amount as to which there seems to be some uncertainty. A large part of the testimony in this cause was taken before a master, but I have examined it with care, and taken in connection with that portion of the testimony which was taken before me in open court I have no hesitancy in saying that the entire series of transactions complained of was in pursuance of a fraudulent scheme designed and carried out with the intention of making the defendant Birkhahn execution proof and that it was all done with the connivance and the knowledge on the part of the parties to the various transactions as to its fraudulent nature.

It is true that the testimony and documentary evidence presented, if reliable, might be said to furnish a complete defense to this suit, and I apprehend that a dismissal of the bill on that ground would be sustained, but I am not obliged to believe all the testimony that has been given, and I do not. In fact, the defense is too complete, in view of the self-evident fact of Mrs. Birkhahn's wild scramble for cover immediately

after the complainant's suit at law was begun, and her failure to testify. The conduct and transactions of the parties in an affair of this kind must be gauged and interpreted according to standards applicable to the ordinary every-day man or woman, and in the light of human experience. It is not usual for men to exhibit such keenness or willingness to invest (?) in second and third mortgages as is here indicated, especially where the funds for such investments must be obtained in the unusual and roundabout manner here disclosed. It is not in accordance with common business experience that such a transaction as the sale of the Birkhahn property and furniture is consummated, especially with no physical change of conditions except the removal of the principal debtor from the jurisdiction. It is true that the due *formalities* of all the various transactions were observed—too closely, I think; but that is just what is to be expected when the actors in a fraudulent transaction seek to cover their trail of fraud. Equity is not bound by the apparent form—"it looks at truth and reality through whatever disguise it may assume." *Commonwealth* v. *Hunt, 4 Mt. (Mass.) 111.*

I have no doubt that the fee paid to Mr. Quigley by Steiner was repaid a few days later by Hellerman even though his wife's check was used for that purpose, and Steiner's actions were not those of the ordinary investor. He depended too much upon Hellerman and Daniels, and Daniels did not testify.

In connection with the law action of the defendant Rotter against Mrs. Birkhahn, the original order to show cause issued herein on November 8th, 1929, contained restraint against further proceedings in that suit and subsequent orders of this court contained restraint against the parties and their attorneys from "proceeding therewith in any manner." Any settlement of that suit by the parties themselves or their attorneys, pending the final decision in this cause, was in direct violation of the orders of this court and the restraint thereby imposed, and will not be permitted to prejudice the rights of the complainant. I will advise a decree in accordance with these conclusions.