Joseph Patrisco, complainant,

*v.*

Nolan's Point Amusement Company, a New Jersey corporation, defendant.

[Decided March 7th, 1932.]

*Messrs. King & Vogt,* for the exceptants

*Mr. Max L. Rosenstein,* for the receiver.

Berry, V. C.

The insolvency receiver of the defendant corporation filed a petition challenging the validity of a chattel mortgage of the defendant company, dated July 14th, 1928, given to John J. Carberry, William J. Bassett and Albert R. Williams to secure them as accommodation endorsers on company notes and renewals thereof to an amount not exceeding $35,000. The matter was referred to a master who took testimony and

reported that the mortgage was void on the ground that the mortgagee's affidavit was defective; that the security had been released by acts of the parties, and that the liability which was intended to be secured had not, in fact, been incurred by the mortgagee endorsers.

Numerous exceptions have been filed by the mortgagees or their successors, most of which are argumentative in character, but which may be shortly stated as follows:

1. An exception to the finding that on July 14th, 1928, the date of the chattel mortgage, there was due to the complainant on his judgment the sum of $1,103.90. The evidence shows that the judgment was not entered until February 26th, 1931. Exception sustained.

2. An exception to the finding that the defendant company had outstanding liabilities other than the notes in question, on July 14th, 1928, amounting to $1,710.10. It is claimed that most of these accounts were paid and the unpaid items were in dispute. It is unnecessary to consider this exception, as the importance of the finding is not apparent. Clearly the company was not insolvent at the time the mortgage was executed.

3. An exception to the finding that the assumption by the endorsers of the company's liability on notes to the extent of $43,815.83 was not a payment of the liability contemplated by the mortgage and which it was given to secure. The facts are that company notes to an amount in excess of $43,000 bearing endorsements of the original mortgagees or their successors were called by the banks. Some small amount was paid on account by the endorsers and individual notes substituted for company notes which were surrendered by the banks to the endorsers. The argument in support of the master's report is that this constituted a payment and cancellation of the company obligations, but that actual liability by the endorsers has not yet been incurred because the individual notes which were substituted for the company's notes have not been paid. I am unable to follow this argument. The company notes were paid, but by the endorsers, and this being so, it is difficult to understand why the contemplated

liability has not been incurred. Had these endorsers discounted their individual notes at other banks and with the proceeds thereof paid the company notes, there could have been no question but that the liability had been incurred. That they discounted their individual notes at the banks which held the company notes does not alter the situation. The liability was incurred as effectually in the one case as the other and as effectually as it would have been had they paid the company notes in cash out of their individual pockets. The important point is that the company liability to the banks was canceled, and the individual liability of the endorsers assumed by them. Exception sustained. What I have said here disposes of the seventh exception also.

4. An exception to the finding that the affidavit of the mortgagees attached to the chattel mortgage is legally insufficient. This exception presents the real question here involved and the only one about which I have had any difficulty. It will be considered later.

5. Is dependent upon the fourth and will be disposed of accordingly.

6. An exception to the finding that the chattel mortgage has been released by the mortgagees. There is no evidence of any relinquishment of the mortgage security. When the company notes were paid they were delivered to the mortgagees who have since held them as evidence of their claim against the defendant company. Exception sustained.

7. This exception is to the finding of the master that "it is questionable whether a chattel mortgage such as this can constitute a lien on buildings attached to and improvements made upon the terrain of a freehold in which the mortgagor has only a lease for a term of years." No such issue was presented by the pleadings and the master exceeded his authority in so reporting. Exception sustained.

8, 9. Are included in other exceptions and require no separate consideration.

This leads to a consideration of the fourth exception.

The condition of the mortgage recites that the mortgagees are endorsers of company notes dated and payable as follows:

| | | |
|---|---|---|
| December 9, 1927 | Dover Trust Company | $10,000 |
| May 25, 1928 | Dover Trust Company | 2,000 |
| December 5, 1927 | National Union Bank | 10,000 |
| March 30, 1928 | National Union Bank | 1.000 |
| April 10, 1928 | National Union Bank | 1,000 |
| April 24, 1928 | National Union Bank | 1,500 |
| May 7, 1928 | National Union Bank | 1,500 |
| | | $27,000 |

And that the mortgage is given to secure the liability of the endorsers on these notes or any renewals thereof and on any additional or other notes and renewals thereof not exceeding in the aggregate $35,000. The affidavit annexed to the mortgage reads as follows:

"State of New Jersey, County of Morris, *ss.*

John J. Carberry, William J. Bassett and Albert R. Williams being duly sworn on their oaths, say that they are the holders of the foregoing mortgage, and that the true consideration of said mortgage is such an amount as the deponents may be compelled to pay as accommodation endorsers of certain promissory notes made and given and to be made and given by Nolan's Point Amusement Company to the National Union Bank and the Dover Trust Company to secure loans from said banks and the proceeds of the discount of which notes are to be credited to the account to the Nolan's Point Amusement Company and said mortgage is made and given to secure these deponents against any liability or obligation assumed by them by reason of their said endorsements of notes made for the benefit for the said Nolan's Point Amusement Company and discounted or to be discounted by National Union Bank or Dover Trust Company; the amount due and to grow due on said mortgage in such sum not exceeding thirty-five thousand dollars ($35,000.00) for principal and interest, costs, charges and expenses as said deponents may be compelled to pay by reason of said accommodation endorsements of said notes for the benefit of Nolan's Point Amusement Company.

JOHN J. CARBERRY
WILLIAM J. BASSETT
ALBERT R. WILLIAMS.

Subscribed and sworn to before me this 14th day of July, 1928.

LYMAN M. SMITH,
*Master in Chancery of N. J.*"

The proofs taken before the master show that the Dover Trust Company held no note of December 9th, 1927, for $10,000 and no *company* note dated May 25th, 1928, for $2,000; but that it held a company note of $10,000 dated

December 6th, 1927, discounted on December 9th, 1927, and a $2,000 note dated May 25th, 1928, made by Williams and Bassett, individually, discounted on that date and the proceeds of which were credited to the company's account. The master found that the misstatement in the body of the mortgage concerning these two notes, assuming it to have become a part of the affidavit by reference, was false and therefore fatal; and that if the affidavit did not refer to the mortgage the requirements of the statute respecting a statement of the consideration were not met, and that in either event the mortgage was void.

It may be conceded that the affidavit attached to this chattel mortgage, standing alone, would be legally insufficient, but the affidavit must be read with the mortgage. *Fletcher* v. *Bonnet, 51 N. J. Eq. 615; Green* v. *McCrane, 55 N. J. Eq. 436; Hunt* v. *Ludwig, 93 N. J. Eq. 314; affirmed, 94 N. J. Eq. 158; Lessler* v. *Paterson National Bank, 97 N. J. Eq. 396; affirmed, 99 N. J. Eq. 428; Finkel* v. *Famous Lunch Room Co., 100 N. J. Eq. 85; Abeles* v. *Guelick, 101 N. J. Eq. 180; Sherman* v. *Union County Wholesale Tobacco and Candy Co., 108 N. J. Eq. 477; Metropolitan Store and Saloon Fixture Co.* v. *Albrecht, 70 N. J. Law 149.*

It is true that in most of these cases there was a specific reference in the affidavit to the body of the mortgage itself, and upon that ground the court held that the statements made in the body of the mortgage were incorporated in the affidavit, and became a part of it. But in *Green* v. *McCrane, supra,* Vice-Chancellor Grey said that where the affiant swears that he "is the mortgagee named in the foregoing mortgage," that reference is sufficient, and that "no one can read the affidavit without being referred to the mortgage." * * * "The affidavit and the chattel mortgage, when read together, sufficiently comply with the statutory requirements." Where the *bona fides* of the transaction are not in question, slight circumstances will justify a reading of the affidavit and the mortgage as one and the court should search diligently for a means to uphold the agreement of the parties. In *Howell* v. *Stone & Downey, 75 N. J. Eq. 289,* Judge Dill,

speaking for the court of errors and appeals, said: "Prior to the decision of this court in *American Soda Fountain Co. v. Stolzenbach, 75 N. J. Law 721,* the statutory affidavit of consideration of a chattel mortgage had been construed by courts below as 'a statutory requirement of considerable technicality,' but in that case we squarely rejected that doctrine, holding that in the absence of fraud, instruments so common in the course of commercial transactions by laymen as chattel mortgages *should be sustained whenever there is an honest and substantial compliance with the statute."* (Italics mine.) Here the affidavit and the mortgage should be read together and so read there is an "honest and substantial compliance with the statute" unless the misstatement in the body of the mortgage respecting the notes discounted at the Dover Trust Company is fatal. In *Hunt* v. *Ludwig, supra,* Vice-Chancellor Backes said:

"The change in the judicial attitude regarding the statutory affidavit, that an honest and substantial compliance, rather than a technical adherence, is all that is required, * * * marked no relaxation of the rule established by the cases that the affidavit must truthfully state the consideration, and that a substantial deviation from the truth, however honestly made, will invalidate the mortgage as against creditors."

\* \* \* \* \* \* \*

"A true statement of the amount due or to grow due on the chattel mortgage is an essential requisite of the affidavit, and a substantial variance renders the mortgage void as against creditors."

In *Boice* v. *Conover, 54 N. J. Eq. 531,* Vice-Chancellor Emery said that "the question is one of the construction of a statute which defines what the affidavit must contain and makes no exception or allowance for mistakes," and in *Bollschweiler* v. *Packer House Hotel Co., 83 N. J. Eq. 459; affirmed, 84 N. J. Eq. 502,* the same Vice-Chancellor held a mortgage to be void for failure to state the whole consideration where the consideration was stated to be a loan, when, in fact, it was a loan and a contract.

*Hunt* v. *Ludwig, supra,* was affirmed by the court of errors and appeals by a divided court, and Mr. Justice Swayze, speaking for the majority, distinguished between *"defects"* in the statement of the consideration and *"untrue"* statements thereof. There the affidavit was false in that it overstated the amount of the consideration by $500; but here is no overstatement of the consideration and no attempt, mistaken or intentional, to secure more than the actual liability, or to suppress the true consideration. The recital of the notes is "defective," rather than "untruthful." The liability secured was an "accommodation" liability; that it was partly as maker and partly as endorser, instead of solely as endorser, does not render false an otherwise truthful statement of the consideration. "The word 'true' in this connection, means that which is frank and actual, rather than that which is precise and technical." *Strong* v. *Gaskill, 53 N. J. Law 665; 59 Atl. Rep. 339.* "The law does not require technical nicety." *Finkel* v. *Famous Lunch Room Co., supra.* "No intending creditor could be misled, \* \* \* he would be put upon notice of the debt sufficiently to inform himself." *Dawson* v. *Pine, 6 N. J. Mis. R. 774.* "An affidavit of consideration is not to be tested by the rules of pleading nor treated as a technical requirement. *On the contrary, it should be the aim of the courts, when the mortgage is bona fide, to preserve, and not to destroy,* and, as Sir Matthew Hale said, *the courts should be astute to find means to make such instruments effectual, according to the honest intent of the parties."* (Italics mine.) *Howell* v. *Stone & Downey, supra.* "Criticisms directed to matters of artifice, rather than those of substance, ought not to prevail." *American Soda Fountain Co.* v. *Stolzenbach, supra.* The statute should not be used as an instrument of inequity any more than of fraud. The *bona fides* of this transaction, as I have already said, cannot be questioned and the liability, to secure which the chattel mortgage was given, has undoubtedly been incurred.

As to the $10,000 note, the misrecital of the date may have been merely a clerical error. If the figure nine had been turned upside down the true date would have been shown,

and, at any rate, December 9th was the date upon which the note was actually discounted. The fourth and fifth exceptions are sustained.

It is also argued by counsel for the receiver that the affidavit is defective in that it does not recite the consideration for the company notes which were discounted at the banks. The recital of the consideration for these notes was not necessary. *Simpson* v. *Anderson* (*Court of Errors and Appeals*), *75 N. J. Eq. 581.*

It appears from the evidence before the master that some time after the chattel mortgage was executed Carberry severed his connection with the company and his place in the organization was taken by others, who assumed his liability. Carberry's successors in liability are entitled to his security by right of subrogation, if not otherwise. That Carberry did not assign his interest in the mortgage is immaterial. The liability of the mortgagees was several as well as joint. The mortgage was valid in the hands of the remaining mortgagees without assignment.

I will advise a decree accordingly.