On November 17th, 1927, Harris Green obtained, by default, a judgment for $15,000 against the defendant Edward Carroll and one Thomas McGreevey. Green subsequently died. The bill in this case to set aside an alleged fraudulent conveyance was filed by Solomon E. Green, administrator of the estate of the said Harris Green.
The property in question was acquired by the defendant Edward F. Carroll, by deed dated January 11th, 1905. On March 31st, 1926, the defendants conveyed it to Harriet S. Hagen, who, by deed of the same date, reconveyed it to Mary Carroll the defendant. The defendants maintain that the transaction throughout was bona fide; that it was based upon a valuable consideration. They say that when Carroll bought the property in 1905, the purchase price paid by him to his grantor had been supplied by the defendant Mary Carroll. *Page 2 
The defendants said that Mrs. Carroll's mother died in 1903 and that she then collected $1,000 on an insurance policy on her mother's life; she turned this sum over to her husband for the purpose of purchasing the premises.
There was a mortgage on the property of $1,000 held by William B. Gillmore, guardian; this mortgage was paid and satisfied with Mrs. Carroll's money according to the defendants. The complainant met the defendants' contention by producing bank records showing a check account and a savings account in the Hudson Trust Company of Hoboken in the name of Edward Carroll, the defendant. The savings account shows a withdrawal of $1,300 made on January 19th, 1905, this being the same month in which the property was conveyed to Carroll. The deed of conveyance to him is dated January 11th, 1905, and the acknowledgment on it is dated January 27th, 1905; while the date of recording the deed is January 28th, 1905.
The Gillmore mortgage of $1,000 was paid and satisfied on February 14th, 1913. The bank account of defendant Edward Carroll shows a withdrawal of $800 on January 30th, 1913, which was two weeks before the mortgage was satisfied of record. The defendant Mary Carroll says that the money to pay and satisfy the mortgage was hers; it represented savings acquired through making clothes for a relative, or relatives, on different occasions. Carroll said that the moneys which were in the bank accounts, despite the fact that they appeared in his name, were the property of the Cattle Butchers Union, Local No. 5, of which he then was and still is the treasurer. The union's moneys, he asserted, were then kept in his private account. Its rules, to-day, require him to have a separate bank account for its funds. His explanation is not at all satisfactory or persuasive.
Mrs. Carroll said she had no bank account; that it had been her habit to keep her money under the oilcloth which covered the floor of her kitchen, or other apartment. She presented no corroborating evidence of the payments to her husband, and her testimony was neither clear nor convincing. Lysakowski v.Blauvelt, 115 N.J. Eq. 501. *Page 3 
The claim of the complainant's intestate against the defendant arises out of a tortious act; a suit at law was instituted under it, and summons issued March 16th, 1926, and the judgment resulted. The conveyance was made March 31st, 1926. There is no doubt about the law in such case — a conveyance causing grantor's insolvency, and made after the liability accrued, and evidently made for the purpose of defeating the claim arising therefrom, will be set aside. Where the circumstances surrounding the transaction presents the inescapable inference that the conveyance was made to frustrate a claim, equity will grant relief. Washington National Bank v. Beatty, 77 N.J. Eq. 252;Babirecki v. Virgil, 97 N.J. Eq. 315.
Where a grantor of real estate is rendered insolvent by a conveyance, or transfer of property, and existing creditors consequently have no way, at law, of satisfying their claims, equity when invoked will readily step in and extend its aid to the applying creditor. This power, of course, is in accord with long recognized equitable principles, which, in comparatively recent years, has been affirmed by many states in the adoption of the Uniform Fraudulent Conveyance act, and which under our statute is P.L. 1919 ch. 213, and pertinent to this case is section 9 (1), which provides as follows: "Where a conveyance or obligation is fraudulent as to a creditor, when his claim has matured, such creditor may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim."
Section 2 (1) of the same act holds that: "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Dammers v. Croft, 111 N.J. Eq. 462.
Carroll's testimony in the discovery proceedings, had under the judgment, which was received in evidence in this case, is conclusive of his insolvency.
Mr. Justice Bodine, speaking for the court of errors and *Page 4 
appeals, in the case of Fischer v. Cannato, 111 N.J. Eq. 345,
said: "There is no proof in the case of the payment of a fair consideration. At most, there is but the vaguest suggestion of payment * * * of some indefinite sum of money. The parties are not clear as to the amount, place or time of payment * * *. They are equally vague as to the source from whence the money came." That language of the learned justice fits the evidence of the defendants in the instant case. Their testimony lacks clearness, certainty, time and place.
I am satisfied the complainant is entitled to the relief he seeks and I shall, therefore, advise a decree setting aside the said conveyance.