On April 13th, 1938, the complainant obtained a judgment in an action at law against the defendants Amilcare and Margaret Ottolino, husband and wife, for $1,538.46 and costs. The day before the action was begun, on November 23d 1937, Amilcare and Margaret Ottolino executed a chattel mortgage to the defendant Joseph Ottolino, a brother of Amilcare, covering the contents of the store at No. 1186 Summit avenue, Jersey City. The mortgage was duly recorded. Attached to it was an affidavit signed by the mortgagee, Joseph Ottolino, which reads as follows:
"JOSEPH OTTOLINA, the mortgagee in the foregoing mortgage named, being duly sworn, on his oath, says that the true consideration of said mortgage is as follows, viz.: the just and full sum of $1,340 due and owing from Amilcare A. Ottolina and Margaret Ottolina, made up as follows: The sum of $1,250.00 as represented by five (5) shares of Preferred Stock of the par value of $100.00 each, of the Hudson Wholesale Grocery Co., designated by Certificate No. 64; and five (5) shares of Preferred Stock of the Hudson Wholesale Grocery Co., of the par value of $100.00 each, designated by Certificate No. 65; and five (5) shares of Common Stock of the Hudson Wholesale Grocery Co., of the par value of $50.00 each, as designated by Certificate No. 378, which shares of stock have been given as collateral security by deponent to the Hudson Wholesale Grocery Co. as a guaranty for any and all moneys owing by the mortgagors herein to the Hudson Wholesale Grocery Co., and to whom deponent is informed there is at present due the sum of approximately $2,000.00, but for which deponent is demanding as security, the actual face value stock deposited with the Hudson Wholesale Grocery Co. as collateral security therefor; and the sum of $90.00 due by the mortgagors to one, Rosaline Keller, upon the original indebtedness of $500.00 due by the mortgagors to Rosaline Keller, which indebtedness is dated October 16th, 1936, and upon which there is due the sum of $90.00 and which sum deponent guaranteed, making a total of $1,340.00, and deponent further says that there is due and to grow due on said mortgage the sum of THIRTEEN HUNDRED FORTY ($1,340.00) DOLLARS besides lawful interest thereon from the 23d day of November, 1937."
Approximately two months after its execution, or on January 24th, 1938, Joseph Ottolino foreclosed the mortgage. At the sale following, the chattels enumerated in the schedule attached to the mortgage, were purchased by Joseph Ottolino for the sum of $100. Prior to, and at the time of the sale, Amilcare and Margaret Ottolino had been in possession of the store, where the scheduled chattels were, and ran the *Page 512 
business therein. After the foreclosure and sale of the goods and chattels, they continued to conduct the store business.
The complainant seeks to set aside the chattel mortgage; annul the foreclosure proceedings and sale of the chattels thereunder; to impress a trust upon the contents of the store, or the proceeds arising from the disposition of the same; and to apply any and all moneys, goods and chattels, equitably belonging to the judgment-debtors to the payment of the complainant's judgment.
On August 10th, 1938, a fire damaged the store and its contents. The chattels were covered by a policy of insurance of the Eureka Security Fire and Marine Insurance Company. The company upon an adjustment of the loss, has agreed to pay the sum of $720.83. After the institution of this suit, the insurance company was enjoined from paying the adjusted loss to the defendants, their agents and assigns; and the money due under the adjustment, awaits the outcome of this suit.
The complainant attacks the validity of the chattel mortgage under the provisions of the Chattel Mortgage act and under the Fraudulent Conveyance act. He contends that under the Chattel Mortgage act, the affidavit of the mortgagee is false under three material points: (1) Because the certificates of stock given by him to the Hudson Wholesale Grocery Company "as collateral for any and all moneys owed by the mortgagors * * * to the Hudson Wholesale Grocery Co." had not been delivered, as stated in the affidavit; (2) that the affidavit by the mortgagee as to the approximate amount of $2,000 due the Hudson Wholesale Grocery Company is false, whereas, the amount actually due was $2,483.64; (3) that Amilcare Ottolino alone, and not "Amilcare and his wife Margaret" as stated in the affidavit, was indebted to the company.
The evidence shows that the shares of stock were not delivered to the Hudson Wholesale Grocery Company on or before November 23d 1937, which was the date of the execution of the mortgage and affidavit thereon. They were not delivered until shortly before the hearing in this cause — approximately eleven months after the execution of the mortgage *Page 513 
(Trans., pages 32, 33, 41). The statement by the mortgagee of the alleged time of the delivery of the stock is fatal to his cause.Kauffman v. Utility Trucking Co., 120 N.J. Eq. 576;187 Atl. Rep. 155; DeYoe v. Harper Bros., Inc., 121 N.J. Eq. 599;191 Atl. Rep. 851. In Hunt v. Ludwig, 93 N.J. Eq. 314;116 Atl. Rep. 699; affirmed, 94 N.J. Eq. 158; 118 Atl. Rep. 839, the court said: "The affidavit annexed to a chattel mortgage must truthfully state the consideration, and a substantial deviation from the truth, however honestly made, will invalidate the mortgage as against creditors."
The testimony shows that on November 23d 1937, Amilcare Ottolino was indebted to the grocery company in the sum of $2,483.64, and not the sum of $2,000 as affirmed by the defendants (Trans., page 31). Patrisco v. Nolan's PointAmusement Co., 10 N.J. Mis. R. 397; 159 Atl. Rep. 620 (at p.623). Joseph Ottolino testified that Amilcare owed the grocery company the sum of $2,000; Amilcare testified that he was the sole owner of the store, and that he personally owed the said sum of $2,000 to the grocery company (Trans., pages 69, 75). His testimony establishes the falsity of the statement in the mortgage affidavit that the mortgagors Amilcare and Margaret Ottolino owed the money. There is no evidence that Margaret was one of the debtors. Bleakley v. Nelson, 56 N.J. Eq. 674;39 Atl. Rep. 912; Passaic National Bank and Trust Co. v. Owens,111 N.J. Eq. 486; 162 Atl. Rep. 879.
The defendants argue that under a written agreement dated March 23d 1936, Exhibit D-1, Joseph and Clothilde Ottolino guaranteed to pay the debts of Ottolino Bros. to the grocery company; and promised to pledge, by immediate delivery, the grocery company stocks amounting in face value to $1,250. Under the provisions of the Uniform Stock Transfer act (R.S. 1937,14:8-36), the Ottolinos became obliged to make delivery to the company. It will be observed that the affidavit attached to the mortgage does not refer to the agreement; nor does it contain any mention of any pre-existing obligation incurred by Joseph Ottolino, the mortgagee, to give the stocks to the grocery company, or to deposit them *Page 514 
with it. The affidavit of the mortgagee fails to state when the indebtedness of the mortgagor to the company, the payment of which the mortgagee allegedly guaranteed, arose. It is likewise silent as to what the consideration of the indebtedness was. It also fails to state when the indebtedness of the mortgagor to Rosaline Keller, the payment of which was allegedly guaranteed, began; how it came into existence, and what the consideration for it was. Bateman Bros., Inc., v. Jones, 109 N.J. Eq. 8;154 Atl. Rep. 4. R.S. 1937, 46:28-5 provides that a chattel mortgage —
"Shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or confirmation, made and subscribed by the holder of such mortgage, his agent or attorney, stating the consideration of such mortgage and as nearly as possible the amount due and to become due thereon, be recorded as provided by Sec. 46:28-7 of this title."
The consideration must not only be truthfully set out in the affidavit attached to the chattel mortgage, but it must be completely set forth. Wisner Manufacturing Co. v. SecondNational, c., Co., 111 N.J. Eq. 535; 162 Atl. Rep. 917; ArnestoPaint Co. v. Brush, 117 N.J. Eq. 368; 175 Atl. Rep. 902; LionShoe Co. v. Price, 108 N.J. Eq. 553; 155 Atl. Rep. 775. The affidavit contains no statement as to when and how the obligation for which the mortgage is given is payable and the amount due and to become due therein. See Chattel Mortgage act, R.S. 1937,46:28-5; Hunt v. Ludwig, supra.
The defendant Amilcare testified that he owed over $2,000 to the grocery company, and $90 to Rosaline Keller; and that he had no assets and no bank account. He also testified that he owned the premises No. 557 Liberty avenue, Jersey City, which was subject to a $7,000 mortgage. Later, on cross-examination (Trans., page 73), he testified that those premises were in his, and his wife's name. The complainant directs attention to the contents of Exhibit D-4, which is a deed to the premises. That instrument discloses that the title to the premises is in "Aurora Margaret Ottolino." Aurora Margaret Ottolino is the wife of Amilcare. The deed clearly contradicts Amilcare's testimony as to title. Gorsch v. Birkhahn, 8 N.J. Mis. R. 491;151 Atl. Rep. 121. *Page 515 
The defendants contend that the complainant before coming to this court for relief was required to first exhaust his legal remedies in a court of law. I do not agree with that contention. I am satisfied this court has complete jurisdiction and that it is the proper judicial forum within which to litigate the issues involved. This proceeding is justified under the provisions of the Uniform Fraudulent Conveyance act, R.S. 1937, 25:2-15. InFisovitz v. Cordosco Construction Co., 102 N.J. Eq. 354, it was held:
"The Fraudulent Conveyance act of 1919 (Cum. Supp. Comp. Stat.p. 647) permits a common creditor, and even one whose debt has not matured, to file a bill attacking fraudulent conveyances."
See Goren v. Loeb, 124 N.J. Eq. 335. This complainant is a judgment creditor; and, he has every right to institute this suit. Lysakowski v. Blauvelt, 115 N.J. Eq. 501;171 Atl. Rep. 500; Green v. Carroll, 116 N.J. Eq. 1; 172 Atl. Rep. 202.
A link in the chain of circumstances operating against the defendants is; the date of the institution of the complainant's law suit against Amilcare — November 24th, 1937; the execution of the chattel mortgage by Amilcare to his brother Joseph the day previous, November 23d 1937; two months later, January 24th, 1938, the foreclosure of the chattel mortgage and the purchase of the chattels by brother Joseph for the sum of $100; the prior operation of the store business by the mortgagor, Amilcare, and his continued operation of the same after the foreclosure, sale and purchase by the mortgagee, Joseph.
Under all the circumstances, my conclusion is that the chattel mortgage should be declared void. I am satisfied that the agreement, Exhibit D-1, is invalid. Consequently, all proceedings based thereon, and thereunder, are void. Bleakley
v. Nelson, supra; Passaic National Bank and Trust Co. v.Owens, supra; Lion Shoe Co. v. Price, supra; Arnesto PaintCo. v. Brush, supra.
I shall advise an order granting the relief sought by the complainant. *Page 516