**In re LAUER et al.**

District Court, D. New Jersey.

May 1, 1941.

Albert B. Kahn, of Trenton, N. J., for petitioner.

Allan L. Tumarkin, of Newark, N. J., for Trustee in Bankruptcy, Peter Friedman.

FORMAN, District Judge.

This matter comes before this court on the petition of William H. Sandford & Son, hereinafter referred to as "mortgagee," to review the order of the referee in bankruptcy entered on September 28, 1940, by the terms of which two chattel mortgages, dated August 9, 1938, and October 18, 1939, respectively, were declared null and void. The property covered by said mortgages had previously been sold by order of the referee at public sale, free of the lien of said mortgages, and the fund was held by the trustee subject to the determination of the court as to the validity of the mortgages. By the terms of the order the fund was declared discharged of said liens, and the claim was allowed as a general, unsecured claim against the estate in the sum of $3,223.67.

The first of the above mortgages was executed on August 9, 1938. The affidavit of consideration attached thereto is dated August 10, 1938, and the chattel mortgage was recorded August 11, 1938. The affidavit states that the true consideration of the mortgage is as follows: " * * * the sum of $3,795.00 due to Wm. H. Sandford & Son evidenced by a promissory note made by the mortgagors as makers dated August 9, 1938, payable September 19, 1938 to the order of Wm. H. Sandford & Son at the Newton Trust Company, with interest, said monies due on said note being made up of and including $2380.00, being the purchase price or part payment for 14 dairy cows this day sold and delivered by Wm. H. Sandford & Son, cattle dealers, to said Clinton A. Lauer and Anna M. Lauer, farmers; $1000.00, monies loaned and advanced by deponents to said Clinton A. Lauer and Anna M. Lauer to take up, a

loan made to them known as a crop mortgage by similar name; and the further sum of $415.00 loaned and advanced to said Clinton A. Lauer and Anna M. Lauer for the purpose of taking up a note at the Hope National Bank on which said persons are liable, and deponent says that there is due and to grow due to Wm. H. Sandford & Son said sum of $3,795.00 together with interest from date."

The second of the above mortgages and its affidavit of consideration was executed on October 18, 1939, and recorded on October 19, 1939. The affidavit of consideration states the true consideration to be as follows: " * * * the amount due and to grow due on certain promissory notes made by Clinton Lauer and Anna Lauer to the order of Wm. H. Sandford & Son as follows: one note dated October 18th, 1939 and payable November 20th 1939 at the office of Wm. H. Sandford & Son for the sum of $2296.70 with interest which said note represents the balance due on the purchase price of certain dairy cows heretofore purchased, and monies loaned to the said Clinton Lauer and Anna Lauer by the said Wm. H. Sandford & Son, said note being now secured by a chattel mortgage made by Clinton and Anna Lauer to Wm. H. Sandford & Son under date of August 9th 1938 and recorded in the Warren County Clerks office on August 11th 1938 in Book 33 of chattel mortgages for said County on pages 220 &c, the said note having originally been given for the sum of $3795.00 with interest, this note being a renewal of said last mentioned note and is secured by this chattel mortgage as additional collateral to the chattel Mortgage given as herein above stated. The other note dated October 18th 1939 and payable November 20th 1939 at the office of Wm. H. Sandford for the sum of $1075.00 with interest, which said note is given as evidence of indebtedness for the purchase price of six dairy cows, this day sold and delivered to the said Clinton Lauer, and Anna Lauer by the said Wm. H. Sandford & Son, also an open ledger account together with the costs incident thereto."

With reference to the first mortgage it appears that the mortgagee sold the bankrupts fourteen cows at a price of $2,380. It agreed to advance the bankrupts money to discharge their note held by the Hope National Bank in the amount of $415, as well as make an additional advance of $1,000 with which to discharge the bankrupts'

indebtedness to the New Jersey Production Credit Association, hereinafter designated N.J.P.C.A. It will be observed that the affidavit of consideration incorporates these facts.

The testimony discloses that the note for $415 was originally executed by the bankrupts to the mortgagee, was discounted by the bank, and the proceeds turned over to the makers. There remained due only $414. Upon liquidation the bank delivered the note to the mortgagee which returned it to the bankrupts. The difference of $1 was credited to the account of the bankrupts by the mortgagee.

The obligation of the bankrupts to N.J. P.C.A. did not amount to $1,000 as recited in the affidavit of consideration, but only $984.67. This sum was paid following the execution of the affidavit of consideration but prior to the recordation of the mortgage. The difference in these two amounts —$15.33 was credited to the account of the bankrupts by the mortgagee.

The record discloses that the mortgagee charged in addition to interest on the note accompanying the chattel mortgage a ten per cent. finance charge or $141 for advancing moneys to discharge the note, and the obligation to N.J.P.C.A. The sum of $10 was charged for drawing the chattel mortgage, but since counsel were retained in the preparation of this paper we may assume that the mortgagee acted only as a conduit in this respect. The finance charge and legal fee was not retained out of the moneys advanced on the mortgage, but was liquidated by the transfer of four cows from the bankrupts, valued at $150. The discrepancy of $1 was corrected by a bookkeeping entry.

Finally, it appears that the bankrupts owned sixteen shares of stock in N.J.P.C. A. valued at $80, that this sum was turned over to the mortgagee and credited to the bankrupts' account, and that the bankrupts assigned to the mortgagee funds arising from the sale of milk to be credited to the account of the bankrupts. These credits arose and were extended subsequent to the transaction involving the chattel mortgage.

With reference to the mortgage of October 19, 1939, the affidavit recites that the mortgage secured among other things a note for $1,075.00 given for the purchase price of six dairy cows, and "also an open ledger account together with the costs incident thereto."

694

The ledger account with the mortgagee to which reference is made discloses a sale of six cows to the bankrupts valued at $935, a cash loan of $55, a charge of $50 for drawing papers in connection with a settlement of difficulties existing between the bankrupts and their landlord, Mr. Swinson, and a charge of $10 for drawing the chattel mortgage. The total of these figures amounts to only $1,050. The difference between this and $1,075 arose by virtue of the bankrupts' rejection of one of the cows purchased and an exchange for a cow at a cheaper price. This amount was credited to the bankrupts' account.

It appears that the bankrupts owed rental money to their landlord, Mr. Swinson, and that legal proceedings were pending to evict them. In addition, the bankrupts were having difficulty by virtue of the absence of running water in the barn on their farm. The cash loan of $55 was either advanced to enable the landlord to install water in the barn or to be used as payment of rent. Clifford Sandford, a partner in the mortgagee's business, testified that he advised bankrupts how to operate their farm to better advantage, and adjusted the difficulties between them and Swinson. The ledger indicates that two days' time was consumed in this respect. For his services the charge of $50 was made.

This mortgage was drawn by the daughter of Clifford Sandford. A charge of $10 was made for these services. Neither Clifford Sandford nor his daughter are authorized to engage in the practice of law.

It was also shown that the statements in the affidavit that $2,296.70 was owing on a note was incorrect, since that sum was not owing until October 20, 1939.

■ We are concerned primarily with the veracity of the affidavits of consideration attached to the above mortgages. These affidavits are required by statute. Revised Statutes of New Jersey, 1937, 46:28–5, N.J.S.A. 46:28–5. Formerly, a high degree of technical accuracy was required in the composition of the affidavit, but since the case of American Soda Fountain Co. v. Stolzenbach, 75 N.J.L. 721, 68 A. 1078, 16 L.R.A.,N.S., 703, 127 Am.St. Rep. 822, a more liberal interpretation of the statute has been permitted, and it is now established that in the absence of fraud, an honest and substantial compliance with the statute is sufficient. The general rule is that the consideration must be truthfully and completely set out in the affidavit. Atzingen v. Ottolino, 124 N.J. Eq. 510, 2 A.2d 652.

The objections to the mortgage of August 9, 1938, are as follows:

1. The affidavit is false because the money owing N.J.P.C.A. was not paid in behalf of the bankrupts by the chattel mortgagee on the date of the affidavit.

2. The affidavit is false because $984.-67 was paid N.J.P.C.A. and not $1,000.00.

3. The affidavit is false because $415 was not advanced to enable the bankrupts to take up a note at the Hope National Bank.

4. The affidavit is false because it does not disclose the return to the mortgagee of sixteen shares of stock in N.J.P.C.A. valued at $80.

5. The affidavit is false because a bonus of $141 was retained by the chattel mortgagee, and, hence, the consideration was overstated.

·The objections to the affidavit attached to the mortgage of October 18, 1939, are as follows:

1. The affidavit is false because $2,296.-70 was not owing on a note on the date of the affidavit, October 12, 1939, but not until October 20, 1939.

2. The affidavit is false because the open ledger account discloses that the consideration was overstated to the extent of $25, this sum being a bonus.

3. The affidavit is defective because the statement that a note for $1,075 was given in consideration of an "open ledger account" is vague and incomplete.

4. The affidavit is defective because the open ledger account discloses that the mortgagee charged $50 for advice rendered in the settlement of the difficulty between the bankrupts and their landlord, Swinson, this exaction being illegal.

We must resort to judicial construction to determine at what point of time the affidavit must be correct: namely, at the time of the execution of the affidavit, or at the time of the recordation of the mortgage.

In the case of Tingley v. International Dynelectron Co., 74 N.J.Eq. 538, 70 A. 919, 922, the mortgage was vitiated because the affidavit did not make a "true statement of the status and consideration of the mortgage *at the time of recording it, which is the time when it must be true."* (Italics supplied.) It should be noted that the affidavit apparently (the case does not dis-

close the date of recordation) was not true at that time, and in addition there were other grounds for nullifying the mortgage.

The court in the case of Stanber v. Sims Magneto Co., 98 N.J.Eq. 38, 129 A. 710, had before it a case in which the affidavit of consideration was false at the time of the execution of the mortgage, and at the time of the execution of the affidavit of consideration. The court concluded as follows: "The loan was made two days after the affidavit was sworn to, but before the recording of the mortgage. The affidavit is not objectionable if it be true as of the date of the recording of the mortgage. Tingley v. International Dynelectron Co., supra." 98 N.J.Eq. 38, 40, 129 A. 710, 711.

Here, also, there were additional grounds for vitiating the mortgage.

In the case of Kauffman v. Utility Trucking Co., 120 N.J.Eq. 576, 187 A. 155, the affidavit was untrue at the time of the execution of the mortgage and the affidavit, and at the time of the recordation of the mortgage. The court concluded that the mortgage was. a nullity because contrary to the affidavit no money was advanced on the date of the *execution* of the mortgage.

In the case of Atzingen v. Ottolino, 124 N.J.Eq. 510, 2 A.2d 652, the consideration, contrary to the affidavit, was not delivered until after the mortgage was recorded. The court nullified the mortgage on the ground that the affidavit was false on the date of the *execution* of the mortgage.

In the federal court we have two cases on this problem—In re Novelty Web Co., D.C., 228 F. 1007 and Lerner v. Gladstone, 3 Cir., 1 F.2d 89. In the former case the affidavit stated the consideration passed on the date of the affidavit. Actually only a portion of the consideration passed before recordation of the mortgage and the balance afterwards. The court determined that the mortgage was void because the affidavit was false on the date of its *execution*.

In the second of the above cases the affidavit was false at the time of its execution as well as the execution of the mortgage, both being the same day. The court concluded that the mortgage was void, but the date of recordation was not disclosed.

■ It appears to us that the affidavit is valid if it be true on the date the mortgage is recorded. For this conclusion we rely on the New Jersey cases of Tingley v. International Dynelectron Co. and Stanber v. Sims Magneto Co. supra. In addition, it should be noted that a chattel mortgage void as to creditors for lack of affidavit or defect therein, etc., is valid as between immediate parties to the mortgage, Seacoast Finance Corp. v. Cornell, 104 N.J. L. 24, 138 A. 695, and that the legislative purpose in requiring an affidavit of consideration was for the benefit of third parties. Bateman Bros. v. Jones, 109 N.J.Eq. 8, 154 A. 4. Such parties are put on notice by recordation, and if the affidavit is true at that point we fail to see how they will be prejudiced, especially in view of the requirement that the mortgage must be immediately recorded. Accordingly, the objection that the mortgage is void because contrary to the affidavit the money was not paid N.J.P.C.A. until after the execution of the affidavit is without merit, since this money was advanced prior to the recordation of the mortgage.

The objection that only $984.67 instead of $1,000 was paid N.J.P.C.A. is highly technical and inconsequential. This error was based upon information furnished by N.J.P.C.A. A credit for the difference was made to the account of the bankrupts. We consider this an honest and substantial compliance with the statute. Fidelity Union Trust Co. v. Augelli, 125 N.J.Eq. 246, 4 A.2d 495.

■ The objection that the affidavit represents that $415 was extended to take up a note at the Hope National Bank when in fact the note was payable to the mortgagee and was simply discounted by and lodged at the bank is without substance. The fact is that this sum of money was advanced by the mortgagee.

■ The objections concerning the failure of the affidavit to disclose the rebate of stock in N.J.P.C.A. valued at $80 which was credited to the account of the bankrupts as well as the failure to disclose the assignment of funds arising from the sale of milk are also without merit. These credits are no part of the consideration extended by the mortgagee, and, hence, their disclosure is not required under the terms of the statute.

The remaining objection concerns a bonus retained by the mortgagee. The mortgage secured a note for $3,795. The consideration for this note as disclosed in the ledger of the mortgagee is as follows

696

"14 cows ................... $2,380.00
Taking up N. J. Production
Credit ................... 1,000.00
Taking up Hope Bank Note 414.00
                          _____
                          $3,794.00 [1] "

However, the evidence in the form of the chattel mortgagee's ledger indicates that the bankrupts were charged $141 for advancing money with which to pay the sums of $1,000 and $414, plus $10 for drawing the papers. The bankrupts liquidated this sum by transferring four cows valued at $150 to the mortgagee.

The mortgagee seeks to explain this on the ground that the charge of $151 and its liquidation was a transaction distinct from the transaction involving the chattel mortgage. Hence, they place themselves in position to say that $3,795 was advanced under the mortgage.

We do not agree that these transactions are distinct. The chattel mortgagee charged in addition to interest $141 for paying off a note for $414 and the obligation to N.J.P.C.A. This charge is for the extension of a consideration which was the very essence of the mortgage, and even though it was paid by the bankrupts from sources extrinsic to the subject of the chattel mortgage, it is still inextricably entrenched in that transaction. Therefore, the mortgagee has not extended a consideration of $3,795 because that sum must be reduced in the amount of $141 or four cows valued at $141. This means that the mortgage actually represented an advance of $3,654.

The law is well settled that if a bonus is retained out of the consideration stated in the affidavit of the chattel mortgagee the mortgage is invalid, because in such case the true consideration is not expressed. Felin v. Arrow Co., 96 N.J.Eq. 44, 124 A. 448, In re Feifer Bros., D.C., 21 F.Supp. 620, McCullough v. McCrea, 3 Cir., 287 F. 342. The mortgagee has attempted to show that this charge was for services rendered, apparently to avoid its consequences as a bonus. The charge is labelled "finance charge" on the books of the mortgagee. The only services rendered were in advancing money to N.J.P.C.A. and for the discharge of the note for $414.

Failing in its claim that this chattel mortgage is valid, the mortgagee contends it is entitled to be subrogated to the position of N.J.P.C.A. on its prior valid and pre-existing chattel mortgage of $1,000 which was paid and satisfied by the mortgagee at the request of the bankrupts out of the consideration advanced by the mortgagee to the bankrupts. The referee denied this claim on the ground that Section 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, placing the trustee in the position of a judgment creditor holding an execution duly returned unsatisfied, elevated the trustee to a status superior to that of the holders of equitable liens, citing Hayes v. Gibson, 3 Cir., 279 F. 812, 22 A.L.R. 1372.

There are two types of subrogation—legal and conventional. The distinction between the two is described as follows in the case of Gore v. Brian, N.J.Ch., 35 A. 897, 898: "The former [legal] is a right to be subrogated to the position of a creditor, when the right arises from the mere fact of payment by one who is compelled to pay the debt to protect his own rights, or by one who stands in the attitude of a surety for the debtor. * * * conventional subrogation can only arise by reason of an express or implied agreement between the payor and either the debtor or the creditor."

The mortgagee herein did not pay the bankrupts' obligation to N.J.P.C.A. to protect its interest, and, hence, its claim in this respect must be based upon conventional subrogation. Also, since there was no express agreement for subrogation, the mortgagee must establish facts from which we might imply subrogation was intended.

A lender is entitled to subrogation when he advances money to discharge securities upon request of the debtor *and with the understanding that the security he receives shall take the place of the securities discharged in respect to priority of lien.* Jackson Trust Co. v. Gilkinson, 105 N.J.Eq. 116, 147 A. 113; Williams v. Vreeland, 32 N.J.Eq. 135; Gore v. Brian, N.J.Ch., 35 A. 897; Seeley v. Bacon, N.J.Ch., 34 A. 139.

Herein, it is true that the bankrupts requested the mortgagee to advance money with which to satisfy the claim of N.J.P.C.A. But that is all. There are no facts from which this court can imply a mutual understanding that the security obtained by the mortgagee should have the same priority as that held by N.J.P.C.A.

_____
[1] The difference of $1 was explained supra.

The latter security was extinguished; a new security was taken, and the mortgagee stands in the position of a volunteer. Furthermore, the property covered by the mortgage to N.J.P.C.A. and whether technical requirements as to the execution thereof were fulfilled are unknown to us. The mortgagee did not raise the question of subrogation until after the sale of the property herein so that there is no record or earmark as to what funds were produced by property covered by the N.J.P.C.A. mortgage or other property. All of these circumstances constrain us to the conclusion that there can be no subrogation. Our determination that there are no rights to subrogation make it unnecessary to consider the referee's conclusion that bankruptcy precluded such relief.

With reference to the mortgage of October 19, 1939, the contention that the affidavit is false because $2,296.70 was not owed until two days after the execution of the affidavit presses technicality too far. Fidelity Union Trust Co. v. Augelli, 125 N.J.Eq. 246, 4 A.2d 495.

We likewise disagree that the affidavit is false because the consideration must be reduced by the sum of $25. This sum was credited to the bankrupts' account, and its existence arose by virtue of an exchange for a cow valued at $25 less than one of the cows originally sold.

The referee concluded that the statement in the affidavit that a note for $1,075 was given in consideration of an "open ledger account" was defective. This was based on the rule that it is insufficient to state that the consideration is a described note or judgment unless there is added the facts upon which the note or the judgment is based. Wisner Co. v. Second National, etc., Co., 111 N.J.Eq. 535, 162 A. 917. It should be noted, however, that unless a statement is given as to how a judgment or note arose there is an absolute failure to state the consideration as required by the statute. Here there is not such a failure, however feeble the attempted statement of consideration may be. We do not disagree with the referee in his conclusion on this point that the phrase "open ledger account" is vague. He states in his memorandum: "The statement gives no information at all. Assuming that it is goods sold, it does not say what goods were sold or when sold; as a matter of fact it might possibly be another loan."

This affidavit indicates that a note for $1,075 was executed. The open ledger account discloses debits against this sum as follows:

| | |
|---|---|
| "Loan | $ 55.00 |
| 2 days time in Swinson matter & drawing papers | 50.00 |
| Drawing chattel | 10.00 |
| 5 cows | 825.00 |
| 1 cow | 110.00" |
| | $1050.00 |

The entry "2 days time in Swinson matter & drawing papers" indicates that the mortgagee has extended itself beyond the limited field in which laymen are authorized to practice law as provided in Revised Statutes of New Jersey, 1937, 2:111–5, N.J.S.A. 2:111–5:

"The provisions of sections 2:111–1 to 2:111–4 of this title [limiting practice of law to licensed attorneys or counsellors at law] shall not apply to: * * *

"c. Any person, partnership or corporation engaged in the leasing, sale or exchange of real or personal property, or in the loaning of money on mortgages on real or personal property, in so far as may relate to legal documents incidental to any lease, mortgage, sale or exchange * * *."

It has charged the sum of $50 for adjusting a dispute between the bankrupts and their landlord, Swinson. Clifford Sandford denied that this advice was in the nature of legal advice, but claimed it was practical advice in the nature of how to operate successfully a dairy farm. He also denied the sum constituted a bonus, but he did say on cross examination—"You can call it a bonus, or a charge whichever you want to call it, sir."

This charge taints the statement that an open ledger account is part of the consideration as contained in the affidavit. We make this point to emphasize the referee's objection that the phrase "open ledger account" fails to disclose the nature of the consideration actually advanced.

The referee's order relegating the chattel mortgagee to the position of a general creditor as to both mortgages is affirmed.