Flockhart, &c., Co. v. Cox Aut. Pipe, &c., Co.   95 N. J. Eq.

FLOCKHART FOUNDRY CO., petitioner,

v.

COX AUTOMATIC PIPE BENDING CO., defendant.

[Decided December 19th, 1923.]

1. Where the affidavits to chattel mortgages state that there was an amount loaned by the mortgagees to the mortgagor, when as a fact the amount paid was reduced by the amount of discount paid on notes on which the money was obtained, such affidavits are not untrue, as the discounts were paid for and on behalf of the mortgagor, and formed a part of the loans. *Hunt* v. *Ludwig,* 93 N. J. Eq. 314, distinguished.

2. Where a chattel mortgage is given for a present valuable consideration moving to the mortgagor company, and the mortgagor company is solvent and not contemplating insolvency, it had a right to borrow the money and pledge its property as security. *VanCleef* v. *Millville,* 78 N. J. Eq. 176, distinguished.

3. Where a company is not insolvent at the time it gave mortgages, and insolvency was not contemplated within the meaning of the statute, its assets far exceeding its liabilities as a going concern, and the loans were made to relieve the company of the embarrassment of not having sufficient ready cash, in the belief of all concerned that the company would prosper, and some of the money was borrowed to extend the company's business, such mortgages were not made to hinder and delay creditors, but were made in good faith to advance the interests of the company.

On final hearing.

*Messrs. McCarter & English* (*Mr. Arthur F. Egner*), for the petitioner.

*Mr. Elmer W. Demarest, per se,* for the receiver.

BACKES, V. C.

The Cox Automatic Pipe Bending Company was declared insolvent and the receiver sold its assets free and discharged

of the lien of two chattel mortgages given by the company to Messrs. Cronan, Cox and Lemke for $10,000 and $15,000, respectively. The mortgagees, Cronan and Lemke, now petition the court to direct the receiver to pay to them the mortgage debts out of the proceeds of sale. The receiver resists the application, setting up that the mortgages were invalid because (*a*) the affidavits annexed do not meet the requirements of the statute; (*b*) that the mortgages are in fraud of creditors in violation of the statute of frauds and (*c*) that they were given when the company was insolvent or at a time when insolvency was contemplated, to the knowledge of the mortgagees, in violation of section 64 of the Corporation act. *Comp. Stat. p. 1638.*

For some years Cronan and Cox had been partners, engaged in building pipe bending machines, under Cox's patents. Cronan furnished the means. In 1918 the defendant company was incorporated and took over the partnership business. In the fall of 1919 the company was in need of cash to pay its pressing debts and for capital to extend its operations. Up to that time it had only been building pipe bending machines and it was arranging to engage also in the business of bending pipe. Cronan, Cox and Lemke—Lemke was a director—borrowed from a local bank $25,000 on two notes of the company, endorsed by Cronan, Cox and Lemke, one for $10,000 and the other for $15,000. The proceeds of the notes were paid to Mr. Cronan, who turned them into the company's treasury. As security the mortgages in question, covering the plant of the company, were executed. The money was used to satisfy pressing creditors and for necessary equipment for the pipe bending business.

*a.* Cronan made the affidavits to the mortgages for himself and as agent of Lemke and Cox. The mortgages and affidavits set forth the transactions in detail, but it is claimed that the statement in the one that the consideration was $10,000 loaned by the mortgagees to the mortgagor, and in the other that the consideration was $15,000 loaned by the mortgagees to the mortgagor were untrue, in that only the pro-

ceeds of the notes were paid to the company. I cannot see the force of this contention. The discounts were paid for and on behalf of the company, and formed part of the loans, and the aggregate made up the total sworn to in the respective affidavits. The case does not fall within *Hunt* v. *Ludwig, 93 N. J. Eq. 314,* or any of the cases there cited.

*b.* The Detroit Engineers, a corporation, had a claim against the company for unliquidated damages. Its first demand was for $7,000 and then it was increased to $74,000, and suit was threatened and begun but never finished. Cox testified—he is now at odds with Cronan and Lemke—that the mortgages were executed for the single purpose of thwarting the Detroit Engineers in the collection of its claim, if it should recover judgment. Two or three clerks gave fragmentary testimony in support. This is denied by Cronan, Lemke, Mr. Warren, a member of our bar and counsel to the company, and a Mr. Cane, a prominent business man and friend of Cronan who helped negotiate the loans. Cronan, Lemke and Cox testify that they regarded the claim without merit. And, moreover, Cox says that the assets of the corporation at the time were worth, in his opinion, $500,000. If that be so or only half true, how, possibly, could mortgages aggregating but $25,000, accomplish what he said was designed. The circumstances attending the loans indicate, and most reliable testimony shows that the mortgages were made in good faith to advance the interests of the company.

The receiver further contends that although actual fraud is not made out, yet if the mortgages have the effect of hindering and delaying creditors, they are fraudulent and void under the statute of frauds, and he relies chiefly on the case of *Van Clief* v. *Millville, 79 N. J. Eq. 176,* which he insists is controlling. I think the cases are widely different in principle. In the instant case the security was given for a present valuable consideration moving to the company and the company being solvent and not contemplating insolvency it had the right to borrow money and pledge its property as security. In the cited case the mortgage was given by a cor-

poration in financial difficulties to a trustee, covering all its property for an amount equal to its debts and for such additional sums to be advanced by the trustee for the protection of the property during the trusteeship. The mortgage was available only to those creditors of the company who would assent and submit to its terms which, among other things, provided for an extension of time for the payment of their debts. Creditors who refused to submit to the scheme, who refused to take what their debtor saw fit to dole out to them on the debtor's terms, manifestly were hindered in the collection of their debts by lawful process, and it was held that such hindrance was in violation of the statute of frauds and that the mortgage was void, and it having been given in violation of the statute it was held to be void as a whole, even as to the money advanced by the trustee to protect the property.

c. The company was not insolvent at the time the mortgages were given, and insolvency was not contemplated within the meaning of the statute. At the time the loans were made and the mortgages given the company's assets, consisting of shop machinery and utensils, pipe bending machines, machines in process of manufacture, parts in stock, book accounts, &c., far exceeded its liabilities as a going concern engaged in the special line this company was engaged in. It is true that the business had never been profitable and that the company was often hard up for ready cash to meet its obligations, but it struggled along although at times it was on the brink of statutory insolvency and had a bill in insolvency been pressed it could not have been successfully resisted. The loans were made to relieve the company of this embarrassing predicament and to stimulate its functions and credit and in the belief and expectation of all concerned that with this handicap out of the way and the new venture in sight, the company would prosper.

The fact that some of the money was borrowed to extend the company's business, and was so used, seems to me argues strongly that insolvency was not contemplated, and the confidence that Cronan, Cox and Lemke had in the future of the

company, displayed by their willingness to advance the company the $25,000, by borrowing it on their own credit, is almost a complete answer to the charge that they contemplated insolvency. I think the case, on 'this score, comes within the principle in *Reed* v. *Helois Carbide Specialty Co., 64 N. J. Eq. 231; Miller* v. *Gourley, 65 N. J. Eq. 237; Regina Music Box Co.* v. *Otto, 65 N. J. Eq. 582.*

The mortgages are valid and are sustained.