## In re FEIFER BROS., Inc.

District Court, D. New Jersey.

Dec. 23, 1937.

Braelow & Tepper and David Bobker, all of Newark, N. J., for trustee in bankruptcy.

Milton M. Unger, of Newark, N. J., for George Ollendorf, mortgagee.

FORMAN, District Judge.

Feifer Bros., Inc., was a corporation doing business in the city of Summit, N. J., and its product was footwear. It was composed of several brothers by the name of Feifer. An involuntary petition in bankruptcy was filed against it on January 20, 1936. There was also a corporation known as the Feifer Footwear Corporation, which was likewise composed of the same individuals. This corporation was located in the city of New York, and incorporated under the provisions of the New York statutes. Financial difficulties arose in both these companies in 1935. On July 16, 1935, a letter was addressed to the creditors of Feifer Bros., Inc., advising them that there had been a meeting of creditors on July 15, 1935, and that a committee had been formed composed of Edmund Lissberger of Comolite Corporation, M. Greenfield of Matthew Greenfield,

James J. Colt of Columbia Combining Company, J. L. Spiegel of J. H. Spiegel, Inc., and I. Rosenfeld of Rosenfeld & Bloom. These men represented their individual firms or concerns, creditors of the bankrupt.

On July 29, 1935, a group of creditors signed an agreement appointing the above committeemen as their attorneys in fact, authorizing them to extend the time for payment of the indebtedness of Feifer Bros., Inc., so that 5 per cent. of the same should be paid each and every month until entirely liquidated. This power of attorney, however, was upon condition that a consolidation of Feifer Bros., Inc., and Feifer Footwear Corporation should be consummated, and that at least $15,000 in cash be supplied as additional working capital.

The Feifer Footwear Corporation subsequently sold its assets to Feifer Bros., Inc., in consideration, inter alia, of the latter assuming the liabilities of Feifer Footwear Corporation. The Feifer brothers agreed to invest $15,000 in Feifer Bros., Inc., and to transfer to the creditors' committee all of the issued stock of Feifer Bros., Inc., and Feifer Footwear Corporation to be held in trust for the benefit of all creditors. The resignation of all the officers and directors of the two corporations was likewise to be turned over to the creditors' committee. In return, the creditors agreed to extend the time for payment of their claims.

On December 12, 1935, the members of the creditors' committee authorized the officers of Feifer Bros., Inc., "to make a loan or loans of not less than $10,000 and as security for the said loans to execute a mortgage covering the property of Feifer Bros., Inc."

Business was carried on by the committee and on December 12, 1935, a contact was made with George Ollendorf, the object of which was to secure the advancement of moneys by Ollendorf to the bankrupt. As a result of this contact, Ollendorf visited the home of Edmund Lissberger in New York City on Sunday, December 15, 1935. It was there agreed that Ollendorf should lend $12,000 to the bankrupt and a mortgage was to be given on the assets of the bankrupt located at Summit, N. J. An arrangement was made to meet in the office of Harry A. Friedman, Esquire, a brother-in-law of

Ollendorf, on December 17, 1935, and close the transaction.

There was prepared by Mr. Friedman an affidavit dated December 17, 1935, signed by Jack Feifer and Isidore Feifer to the effect that Jack Feifer was the president, and Isidore Feifer was the treasurer of Feifer Bros., Inc. This affidavit also recited, among other thing, that there were no liens against the assets and that the affidavit was made to induce Ollendorf to accept a chattel mortgage upon the assets of the corporation located at Summit, N. J.

There is also another affidavit bearing the same date wherein the same persons made the same representations for the same purpose, but as officers of Feifer Footwear Corporation.

On the same date a resolution was made which recited that at a special meeting of the board of directors of Feifer Bros., Inc., held at Summit, N. J., on December 17, 1935, the president and secretary of the corporation were authorized to execute to George Ollendorf a chattel mortgage for $12,000 covering goods on the premises of the company located in Summit, N. J.

There is another resolution bearing the same date which recited that the board of directors of Feifer Footwear Corporation met in New York City on December 17, 1935, and authorized the president and secretary of the corporation to execute the same mortgage on properties at Summit, N. J.

The final and most important paper was likewise dated December 17, 1935. This paper states:

"In consideration of Harry A. Friedman procuring a loan of twelve thousand ($12,000) dollars, which loan is to be secured by a Chattel Mortgage covering all the * * * equipment on the premises occupied by the undersigned corporations and located at * * * Summit, New Jersey, the undersigned corporations agree to pay to the said Harry A. Friedman a fee of two thousand one hundred seventy five ($2,175) dollars for legal services rendered, recording fees, brokerage commission and appraisal fees in connection with the said Chattel Mortgage."

The checks in payment of the mortgage were both dated December 17, 1935, one check was for $10,000 made to the order of Feifer Footwear Corporation. The other check was for $2,000 and was made to the order of Feifer Bros., Inc. The check for $10,000 was deposited in the bank account of the Feifer Footwear Corporation and was used to pay creditors whose claims had matured on a date in October, 1935. Of this money it appears that the Comolite Company, represented by Edmund Lissberger, received $2,506.73, the Columbia Combining Company, represented by James J. Colt, received the sum of $2,446.05, and Rosenfeld &. Bloom, represented by I. Rosenfeld, received the sum of $246.21. Each of the above creditors' representatives was a member of the creditors' committee.

Two objections are made to the validity of the mortgage. It is argued that the affidavit of consideration does not recite the true facts. The affidavit reads as follows:

"George Ollendorf, the mortgagee in the foregoing mortgage named, being duly sworn, on his oath says that the true consideration of the said mortgage is as follows:—A cash loan of twelve thousand ($12,000) dollars, as evidenced by a promissory note, dated December 17th, 1935, and payable one year from the date thereof. Deponent further says that there is due and to become due on said mortgage the sum of twelve thousand ($12,000) dollars besides lawful interest thereon from the 17th day of December, 1935."

The next contention is that the mortgage is invalid under section 64 of the General Corporation Act of New Jersey, 2 Comp.St.1910, p. 1638, § 64, which reads as follows:

"Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, neither the directors nor any officer or agent of the corporation shall sell, convey, assign or transfer any of its estate, effects, choses in action, goods, chattels, rights or credits, lands or tenements; nor shall they or either of them make any such sale, conveyance, assignment or transfer in contemplation of insolvency, and every such sale, conveyance, assignment or transfer shall be utterly null and void as against creditors; provided, that a bona fide purchase for a valuable consideration, before the corporation shall have actually suspended its ordinary business, by any person without notice of such insolvency or of the sale being made in

contemplation of insolvency, shall not be invalidated or impeached."

The referee held that this mortgage was invalid because the affidavit misstated the consideration, and because the mortgage was made when the mortgagor was insolvent, and the mortgagee had notice of this insolvency. A review of this ruling is now presented to the court.

It appears that the $2,000 check payable to Feifer Bros., Inc., was indorsed to Friedman, that Friedman thereafter indorsed it and authorized Ollendorf to cash the same. Ollendorf, however, retained the money under a loan agreement with Friedman, his brother-in-law, giving him his note in like amount as security. The referee found that the $2,000 was a bonus to Ollendorf for making the loan and that the circuitous route the check followed in its return to him was inconsequential. It appears that Friedman, who by his own testimony stated that he came into the transaction two days before the deal was closed, was also paid $185 in addition to the $2,000 check. The referee concluded that the smaller sum was "more nearly proper compensation for the work which he did." The evidence on this point is conflicting. Friedman testified that this sum was a bona fide fee paid him by the mortgagor. On the other hand, Isidore Feifer testified that the $2,000 was a bonus. Apparently the referee found Friedman's testimony unworthy of belief and his conclusion seems justified in view of the fact that there is an entire absence of testimony indicating that the parties were brought together by Friedman.

Remington on Bankruptcy, vol. 8, § 3669, p. 41, makes the following pertinent statement:

"Upon the review, the referee's order is to have the presumption in its favor; also his findings of fact are to have the same presumption.

"It is for the petitioner on review to prove there is error. The reviewing court will hesitate especially to overturn the referee's findings of fact; for the referee is in the better position to judge of the testimony, since he heard it given, and noted the demeanor of the witnesses, and was in a position where he could feel the weight of the spoken words. Only manifest error will justify the reversal on the facts."

Such cogent evidence of mistake nowhere appears in the argument made by petitioner. In the absence of such evidence, there is no reason for reversing the referee's findings. A careful review of the evidence in this case cannot but convince this court that the referee's findings were entirely correct in this respect.

In the case of McCullough v. McCrea et al., in Re White, 3 Cir., 287 F. 342, relied upon by the referee, White had given a chattel mortgage for $24,525 to William McCullough, who made an affidavit reciting that the consideration of the mortgage was $24,525. White was subsequently adjudicated a bankrupt. The referee found that there was actually advanced $22,500 and that the sum of $2,025, the difference between the amount of the note secured by the mortgage and the sum advanced, was a bonus for the loan. The invalidity of the mortgage was affirmed by the Third Circuit of the Circuit Court of Appeals. The petitioner seeks to distinguish this case from the case at bar due to the following language of the court: "The question is whether or not there was an actual bonus deliberately and intentionally concealed. * * * To the extent of the bonus, the affidavit was a fraud upon the creditors of the mortgagor." 287 F. 342, 345.

The petitioner argues that in the instant case the bonus was not intentionally concealed, but that it was revealed since the disbursement was authorized by the corporation, and the creditors' committee knew that the charge was being made.

The referee found that the Feifers, who executed the agreement to pay Friedman $2,175 for his services, were completely dominated by the creditors' committee. The referee also found that the mortgage was negotiated to a large extent for the benefit of the five particular creditors forming that committee. This is not difficult to follow in view of the fact that the creditors directly represented by members of this committee received more than half the money raised by this mortgage, and that the money was paid to an arbitrarily determined group of creditors. In view of the fact that the members of the committee were primarily preserving their own interests, it would be difficult to say that notice to the committee that the $2,000 was paid to Friedman should be imputed to all the creditors. It follows, then, that the petitioner's distinction is without merit.

624

The referee also relied upon the case of Moore, Receiver v. Preiss Trading Corporation, 119 N.J.Eq. 366, 182 A. 824, wherein the complainant sued to set aside a mortgage executed by his bankrupt in favor of the defendant-mortgagee. The consideration was set forth in the affidavit as $5,000 advanced by the mortgagee as evidenced by two checks made by the mortgagee to the order of the mortgagor, one in the sum of $3,000 and the other in the sum of $2,000. In fact, two checks totaling $4,500 were given to the mortgagor instead of two checks in the sum of $5,000. There were two additional checks, one for $200 and the other for $300, but these checks were immediately turned back to the mortgagee and the mortgagor never received the benefit of them. The sum received by the mortgagor was, therefore, not $5,000 as stated in the affidavit, but $4,500, and there were four checks involved in the transaction and not two as set forth in the affidvait. The court affirmed the special master, holding that the mortgage was invalid.

The petitioner cites the case of Flockhart Foundry Co. v. Cox Automatic Pipe Bending Co., 95 N.J.Eq. 382, 123 A. 151. In that case the defendant gave a mortgage securing notes for $10,000 and $15,000. The mortgagor made two notes for these respective sums and the mortgagee indorsed each note, and had them discounted at a bank. The money, less the discount charges by the bank, was turned over to the mortgagor. It was contended that the statement in the affidavit of consideration that $10,000 and $15,000 was loaned was untrue, in that only the proceeds of the notes was paid to the mortgagor. The court held that the mortgage was valid. The distinction between this case and the case at bar is obvious. If the $2,000 in the instant case had actually been paid for a bona fide service, the two cases would be on a parity. That is not the fact, because it has been found that the $2,000 disbursement in the instant case was a bonus.

It becomes unnecessary to consider the contention that the mortgage is invalid for the further reason advanced, i. e., it was given when the mortgagor was insolvent and the mortgagee had knowledge of that insolvency. Much testimony was taken in regard to the financial status of the mortgagor on the date the mortgage was given. The testimony of Mr. Tumarkin, the certified public accountant for the creditors' committee, and Mr. Sternrich, the certified public accountant of the trustee, is relied upon by the referee to sustain his finding that the mortgagor was insolvent on that date. This testimony reveals that the mortgagor had only $738.43 cash in hand on that date, and that the combined liabilities of Feifer Bros., Inc., and Feifer Footwear Corporation was around $83,000. The accountants, however, failed to indicate the value of the assets of the mortgagor on that date. The ascertainment of solvency or insolvency reduces itself to a mere conjecture in the absence of evidence disclosing both the amount of liabilities and the value of assets.

Notwithstanding the court's disagreement with the referee on the issue of insolvency of the mortgagor and the mortgagee's knowledge thereof, the finding that the $2,000 paid Friedman was actually a bonus to the mortgagee is affirmed and the petition dismissed.